1  KHAI LEQUANG (SBN 202922)
   klequang@orrick.com
2  MELANIE D. PHILLIPS (SBN 245584)
   mphillips@orrick.com
3  DAVID P. FUAD (SBN 265193)
   dfuad@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   777 South Figueroa Street
5  Suite 3200
   Los Angeles, California  90017
6  Telephone:  213-629-2020
   Facsimile:   213-612-2499
7

8  Attorneys for Plaintiff
   Karen Benjamin, as Trustee of the Jackson Family
9  2007 Irrevocable Trust

10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12                     WESTERN DIVISION

13

14  KAREN BENJAMIN, as Trustee of the      Case No.  CV12·4556 SVW(SHx)
    JACKSON FAMILY 2007
15  IRREVOCABLE TRUST,
                                           COMPLAINT FOR:
16                  Plaintiff,
                                           1.  **BREACH OF CONTRACT;**
17        v.                               2.  **BREACH OF THE**
                                               **COVENANT OF GOOD**
18  PHL VARIABLE INSURANCE                     **FAITH AND FAIR DEALING;**
    COMPANY, a Connecticut corporation,    3.  **UNJUST ENRICHMENT**
19                                         4.  **VIOLATION OF THE**
                    Defendant.                 **CONNECTICUT UNFAIR**
20                                             **TRADE PRACTICES ACT,**
                                               **CONN. GEN. STAT. §§ 42-**
21                                             **110a, et seq.; AND**
                                           5.  **VIOLATION OF THE**
22                                             **CONNECTICUT UNFAIR**
                                               **INSURANCE PRACTICES**
23                                             **ACT, CONN. GEN. STAT. §§**
                                               **38a-815, et seq.**
24
                                           **JURY TRIAL DEMANDED**
25

26

27

28

                                                            COMPLAINT

1   Plaintiff Karen Benjamin, as Trustee of the Jackson Family 2007 Irrevocable

2   Trust ("Plaintiff"), hereby files this complaint against defendant PHL Variable

3   Insurance Company ("Phoenix" or "Defendant"), and alleges as follows:

4   **NATURE OF THE ACTION**

5   1.   Plaintiff brings this action seeking compensatory and punitive

6   damages, equitable relief, and attorneys' fees based on Phoenix's failure and refusal

7   to pay the death benefit due under a $1.8 million dollar life insurance policy

8   insuring the life of William Jackson (the "Jackson Policy" or "Policy").

9   2.   Phoenix issued the Jackson Policy to The Jackson Family 2007

10   Irrevocable Trust (the "Trust") more than four years ago, and since issuing the

11   Policy, Phoenix has received hundreds of thousands of dollars in premiums to keep

12   the Policy in force.  Mr. Jackson passed away on December 14, 2011.  Shortly

13   thereafter, Plaintiff timely submitted a proof of claim to Phoenix seeking payment

14   of the death benefit under the Policy.  Phoenix, however, has failed and refused to

15   pay the death benefit.  In a bad-faith attempt to re-underwrite the Policy after

16   receiving a claim for the death benefit, Phoenix has stated, without legal basis, that

17   it will not pay the claim until Plaintiff provides Phoenix with a host of irrelevant

18   information.  Payment of the death benefit is now due and owing, and Phoenix's

19   pretextual and unjustified excuses for its failure and refusal to pay the death benefit

20   is a blatant violation of its obligations under the Policy, and constitutes a willful,

21   reckless, and/or wanton disregard of Plaintiff's rights.

22   3.   By improperly refusing to pay, and delaying the payment of, the death

23   benefit on the Jackson Policy, Phoenix has forced Plaintiff to incur the substantial

24   expense and delay of litigation in order to obtain the benefits of the Policy, even

25   after Phoenix has collected hundreds of thousands of dollars in premiums for years.

26   Phoenix's misconduct in refusing to pay the death benefit after collecting premiums

27   for years constitutes not only express breaches of the Policy, but also bad faith.

28   Phoenix's conduct is also part of an ongoing pattern of unfair claims handling in

- 1 -

1  violation of Connecticut's Unfair Trade Practices Act and the Unfair Insurance

2  Practices Act.  Phoenix, a Connecticut insurer, is unquestionably subject to the

3  provisions of those statutes.

## PARTIES

4       4.    Karen Benjamin brings this suit as the Trustee of the Jackson Family

5  2007 Irrevocable Trust.  The Trust is a California trust created pursuant to and

6  organized under the laws of the State of California.  The Trust is the record owner

7  and beneficiary of the Policy, and its address is 30800 Telegraph Road, Suite 1726,

8  Bingham Farms, Michigan, 48025.

9       5.    Upon information and belief, defendant PHL Variable Insurance

10  Company is a Connecticut corporation with its principal place of business and

11  nerve center in Hartford, Connecticut, and is authorized to do business in the State

12  of California and regularly conducts its business in the State of California,

13  including within this judicial district.

## JURISDICTION AND VENUE

14       6.    The Court has jurisdiction over this action pursuant to 28 U.S.C.

15  § 1332(a)(2) because the parties are citizens of different states, and the amount in

16  controversy exceeds $75,000, exclusive of interest and costs.

17       7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and

18  (b)(1) because Defendant resides in this judicial district.

## FACTUAL ALLEGATIONS

19       8.    In 2007, Phoenix issued the Jackson Policy, Policy No. 97525116,

20  with a face value of $1,800,000 and an Issue Date and Policy Date of September

21  19, 2007.  A copy of the Jackson Policy is attached hereto as Exhibit 1.[1]  The

22  owner of the Policy is and has always been the Jackson Family 2007 Irrevocable

23  Trust, which is and has always been the beneficiary of the Policy.  The original

24  trustee of the Trust was James J. Smith.  The issue state of the Policy is California.

[1] Some of the policy information has been redacted for privacy reasons.

- 2 -

9.     California Insurance Code section 10113.5 states that "[a]n individual life insurance policy delivered or issued for delivery in this state shall contain a provision that it is incontestable after it has been in force, during the lifetime of the insured, for a period of not more than two years after its date of issue." The Policy also states: "We cannot contest the validity of the original face amount of this policy after it has been in effect during the Insured's lifetime for two years from the Policy Date (or two years from any reinstatement)." Exhibit 1 (Policy), p. 18.

10.    From the time the Jackson Policy was issued effective September 19, 2007 and until the Policy matured, all of the premiums that were due under the Jackson Policy were paid. Indeed, throughout the contestability period, and after, Phoenix continued to accept premiums on the Policy, including over $277,000 in premiums that were paid after the Policy became incontestable. In total, Phoenix received $394,600 in premiums on the Policy.

11.    Mr. Jackson died on December 14, 2011, while the Policy was in force. On January 23, 2012, Plaintiff submitted a proof of claim to Phoenix requesting payment of the death benefit under the Policy. Despite having been provided all of the documents needed to process the claim, Phoenix completely ignored Plaintiff for weeks.

12.    Having heard nothing from Phoenix for over five weeks, Plaintiff, on February 28, 2012, sent a follow-up letter to Phoenix demanding immediate payment of the death benefit. The next day, Phoenix for the very first time advised Plaintiff that it would not pay the claim unless Plaintiff completed and submitted a Phoenix form entitled Certification and Acknowledgement of Trust Agreement for Death Claim Settlement (the "Post-Claim Questionnaire"). A copy of the Post-Claim Questionnaire is attached hereto as Exhibit 2.

13.    According to Phoenix, the Post-Claim Questionnaire was necessary to establish the owner's insurable interest in the insured . However, under California law, an insurable interest is required to exist at the time the policy is issued—not at

- 3 -

the time the claim is made.  Insurance Code § 10110.1(f) specifically states: "An insurable interest shall be required to exist at the time the contract of life or disability insurance becomes effective, but **need not exist at the time the loss occurs**."  (emphasis added).

14.   In any event, there is no genuine question whether there was an insurable interest at the time the Policy was issued because the insured, Mr. Jackson, was the person who took out the Policy, and "[a]n individual has an unlimited interest in his or her own life . . . and may lawfully take out a policy of insurance on his or her own life . . . and have the policy made payable to whomsoever he or she pleases, regardless of whether the beneficiary designated has an insurable interest."

15.   The Post-Claim Questionnaire, however, asks a variety of questions that have nothing to do with whether an insurable interest existed at the time the Policy took effect.  For example, Question 3 of the Post-Claim Questionnaire seeks information about the Trust's current beneficiaries; Question 4 asks for the identities of all persons or entities that will receive disbursements from the Trust; Questions 7 and 8 ask about the existence and exercise of any power of appointment by Trust beneficiary; and Question 14 asks whether there are any existing loans relating to payment of Policy premiums.  None of these questions is relevant to whether an insurable interest existed at the time the Policy became effective or whether Phoenix must pay the death benefit to Plaintiff.

16.   Plaintiff objected to completing the Post-Claim Questionnaire because, among other things, Phoenix has no right to condition payment of the death benefit upon receiving this information, and the information requested by Phoenix is private and confidential.  Moreover, as part of the claim documents that Plaintiff submitted to Phoenix on January 23, 2012, Plaintiff included a Certificate of Trust Existence and Authority (the "Certificate of Trust").  The Certificate of Trust provided Phoenix with the information Phoenix needed to pay the claim.

COMPLAINT

17.   On April 2, 2012, Phoenix sent Plaintiff another letter reiterating that it would not pay the death benefit under the Jackson Policy until Plaintiff provided the information requested in the Post-Claim Questionnaire.  In response to this letter, Plaintiff sent Phoenix a letter on April 12, 2012 insisting that Phoenix had no right to condition its payment of the death benefit on receipt of the information sought in the Post-Claim Questionnaire.  Nevertheless, Plaintiff provided a sworn affidavit to Phoenix confirming the existence of a valid insurable interest at the time the Policy was issued.  On May 7, 2012, Phoenix responded by again insisting that it would not pay the death benefit unless Plaintiff submitted the Post-Claim Questionnaire.

18.   The Policy states:  "If the Insured dies while the policy is in force, we will pay the Death Proceeds, as described above, **upon receipt of due proof of death of the Insured**, subject to any applicable provisions of the policy."  Exhibit 1 (Policy), p. 10 (emphasis added).  Thus, by its own terms, the Policy does not condition the payment of the death benefit upon the submission of the Post-Claim Questionnaire or anything other than proof of death of the insured.

19.   Because Plaintiff provided Phoenix with proof of Mr. Jackson's death while the Policy was in force, Phoenix had (and has) no legal basis for conditioning the payment of the death benefit upon Plaintiff completing a document that is neither referenced in the Policy nor relevant to the question Phoenix purportedly seeks to answer.

20.   Moreover, California Code of Regulations, Title 10, section 2695.7(b) states:  "Upon receiving proof of claim, every insurer . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part. . . ."  Subsection (1) further states:

> Where an insurer denies or rejects a first party claim, in whole or in part, it shall do so in writing and shall provide the claimant a statement listing all bases for such rejection or denial and the factual and legal bases for each reason given for such rejection or denial which is

1           then within the insurer's knowledge.  Where an insurer's denial of a first party claim, in whole or in part, is based on a specific statute, applicable law or policy provision, condition or exclusion, the written denial shall include reference thereto and provide an explanation of the application of the statute, applicable law or provision, conditions or exclusion to the claim. . . .

2

3

4

5      21.     It has been more than 40 calendar days since Plaintiff submitted the proof of claim on January 23, 2012, and Plaintiff has not received any notice that complies with section 2695.7(b).

6

7

8      22.     As of the date hereof, Phoenix still has failed and refused to pay the death benefit under the Jackson Policy.

9

## FIRST CAUSE OF ACTION

### For Breach of Contract (Express)

12      23.     Plaintiff realleges the allegations contained in paragraphs 1 through 22.

13

14      24.     The Jackson Policy is a binding and enforceable contract.

15      25.     Defendant breached the Policy by failing and refusing to pay the death benefit due under the Policy.

16

17      26.     Plaintiff has performed all of its obligations under the Policy.

18      27.     As a direct and proximate cause of Defendant's material breaches of the Policy, Plaintiff has been damaged as alleged herein in an amount to be proven at trial.

19

20

## SECOND CAUSE OF ACTION

### For Breach of Contract (Bad Faith)

23      28.     Plaintiff realleges the allegations contained in paragraphs 1 through 22.

24

25      29.     The Jackson Policy is a binding and enforceable contract.

26      30.     The Jackson Policy includes an implied covenant that Defendant will act in good faith and deal fairly with Plaintiff.

27

28      31.     Defendant breached the implied covenant of good faith and fair

COMPLAINT

1   dealing by, among other things, failing and refusing to pay the death benefit due

2   under the Jackson Policy, failing and refusing to provide any valid legal or

3   contractual basis for its failure and refusal to pay the death benefit, and making

4   unreasonable pretextual demands for irrelevant information to refuse or delay

5   payment of the death benefit.

6       32.    As a direct and proximate cause of Defendant's breaches of the

7   implied covenant of good faith and fair dealing, Plaintiff has been damaged as

8   alleged herein in an amount to be proven at trial.

9       33.    Furthermore, because Defendant acted with a conscious disregard of

10   Plaintiff's rights, and its actions constitute oppression, fraud, or malice under Civil

11   Code section 3294, Plaintiff is entitled to an award of punitive damages.

12                      **THIRD CAUSE OF ACTION**

13                       **For Unjust Enrichment**

14       34.    Plaintiff realleges the allegations contained in paragraphs 1 through

15   22.

16       35.    The premiums under the Jackson Policy were fully paid to Defendant

17   by the Trust through the maturation of the Policy.

18       36.    Defendant has retained these premium payments and has refused to

19   pay the benefit due under the Policy.

20       37.    Defendant's retention of the premiums and refusal to pay the benefit

21   under the Policy has unjustly enriched Defendant at Plaintiff's expense.

22       38.    Accordingly, Plaintiff is entitled to an order requiring Defendant to

23   pay the benefit due under the Policy.

24                     **FOURTH CAUSE OF ACTION**

25          **For Violation of the Connecticut Unfair Trade Practices Act**

26                **Conn. Gen. Stat. §§ 42-110a, *et seq.***

27       39.    Plaintiff realleges the allegations contained in paragraphs 1 through

28   22.

40.     The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."

41.     Defendant, a Connecticut corporation with its principal place of business in Connecticut, has engaged in "unfair" conduct, as alleged herein, of a "trade" or "commerce" as defined in Conn. Gen. Stat. § 42-110a.

42.     Among other violations of the Unfair Trade Practices Act, Defendant, as part of its general claims handling practices, has (i) made misrepresentations pertinent to the facts relating to coverage under the Policy and other policies, including assertions that it had the right to condition payment of death benefits upon submission of the Post-Claim Questionnaire; (ii) failed to act with reasonable promptness upon communications regarding the Policy and other policies; (iii) refused to pay unquestionably valid claims without a valid legal basis and despite available information establishing the validity of such claims; and (iv) failed to promptly provide a reasonable explanation of the basis for denial of a claim.

43.     Defendant's conduct violates (among other applicable provisions of Connecticut law), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a), and the Connecticut Unfair Insurance Practices Act, including Conn. Gen. Stat. §§ 38a-816(6)(a)-(f), and (n).

44.     Because Defendant acted with a willful, reckless and/or wanton indifference to Plaintiff's rights, it is also liable for punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a).

45.     Plaintiff is also entitled to recover its costs and reasonable attorneys' fees incurred in prosecuting this action pursuant to Conn. Gen. Sta. § 42-110g(d).

46.     In compliance with Connecticut General Statutes § 42-110g(c), a copy of this Complaint has been mailed to the Attorney General of the State of Connecticut and the Connecticut Commissioner of Consumer Protection on this date.

- 8 -

## FIFTH CAUSE OF ACTION

### For Violation of the Connecticut Unfair Insurance Practices Act

### Conn. Gen. Stat. §§ 38a-815, *et seq.*

47.     Plaintiff realleges the allegations contained in paragraphs 1 through 22.

48.     The Connecticut Unfair Insurance Practices Act prohibits any "unfair or deceptive act or practice in the business of insurance" by any Connecticut insurer, including acts defined by statute as unfair claims handling.

49.     Defendant, a Connecticut corporation with its principal place of business in Connecticut, engaged in "unfair" practices in the business of insurance, as alleged herein.

50.     Among other violations of the Unfair Insurance Practices Act, Defendant, as part of its general claims handling practices, has (i) made misrepresentations pertinent to the facts relating to coverage under the Policy and other policies, including assertions that it had the right to condition payment of death benefits upon submission of the Post-Claim Questionnaire; (ii) failed to act with reasonable promptness upon communications regarding the Policy and other policies; (iii) refused to pay unquestionably valid claims without a valid legal basis and despite available information establishing the validity of such claims; and (iv) failed to promptly provide a reasonable explanation of the basis for denial of a claim.

51.     Defendant's conduct violates (among other applicable provisions of Connecticut law) the Connecticut Unfair Insurance Practices Act, including Conn. Gen. Stat. §§ 38a-816(6)(a)-(f), and (n).

52.     Because Defendant acted with a willful, reckless and/or wanton indifference to Plaintiff's rights, it is also liable for punitive damages pursuant to Conn . Gen. Sta. §§ 42-110g(a).

53.     Plaintiff is also entitled to recover its costs and reasonable attorneys'

fees incurred in prosecuting this action pursuant to Conn. Gen. Sta. § 42-110g(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

### On the First Cause of Action

1. For damages in an amount to be determined at trial;

2. For an award of pre-judgment and post-judgment interest;

3. For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

4. For such other and further relief as the Court may deem proper.

### On the Second Cause of Action

1. For damages in an amount to be determined at trial;

2. For an award of pre-judgment and post-judgment interest;

3. For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law;

4. For punitive damages; and

5. For such other and further relief as the Court may deem proper.

### On the Third Cause of Action

1. For an order requiring Defendant to pay the benefit due under the Policy;

2. For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law; and

3. For such other and further relief as the Court may deem proper.

### On the Fourth Cause of Action

1. For damages in an amount to be determined at trial;

2. For an award of pre-judgment and post-judgment interest;

3. For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law;

4. For punitive damages; and

- 10 -

5.    For such other and further relief as the Court may deem proper.

**On the Fifth Cause of Action**

1.    For damages in an amount to be determined at trial;

2.    For an award of pre-judgment and post-judgment interest;

3.    For the costs of the suit herein incurred, including reasonable attorneys' fees to the extent permitted by law;

4.    For punitive damages; and

5.    For such other and further relief as the Court may deem proper.

Dated:        May 24, 2012                    Orrick, Herrington & Sutcliffe LLP


By: _____
          KHAI LEQUANG
         Attorneys for Plaintiff
      KAREN BENJAMIN, AS
     TRUSTEE OF THE JACKSON
     FAMILY 2007 IRREVOCABLE
              TRUST

- 11 -

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiff hereby demands a jury trial on all issues so triable.

3

4

Dated:        May 24, 2012                          Orrick, Herrington & Sutcliffe LLP

5

6

By: _____

7

KHAI LEQUANG
Attorneys for Plaintiff

8

KAREN B. BENJAMIN, AS TRUSTEE
OF THE JACKSON FAMILY 2007
IRREVOCABLE TRUST

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

# EXHIBIT 1

**Insured**　　　　WILLIAM F JACKSON

**Policy Number**　97525116

**Plan**　　　　　　Phoenix Accumulator UL



PHOENIX

Exhibit 1 - 13
PPCOVER1

# TABLE OF CONTENTS

| Section | Provision |
|---|---|
| 1. | Schedule Pages |
| 2. | Table of Rates |
| 3. | Definitions |
| 4. | Qualification as Life Insurance |
| 5. | Total Face Amount |
| 6. | Death Proceeds |
| 7. | Guaranteed Death Benefit |
| 8. | Death Benefit On or After Age 100 Anniversary |
| 9. | Policy Value |
| 10. | Premiums |
| 11. | Grace Period |
| 12. | Policy Termination |
| 13. | Reinstatement |
| 14. | Loans and Overloan Protection |
| 15. | Surrenders and Withdrawals |
| 16. | Basis of Computations |
| 17. | Owner(s) and Beneficiary(ies) |
| 18. | Assignment |
| 19. | Misstatements |
| 20. | Suicide Exclusion |
| 21. | Incontestability |
| 22. | The Entire Contract |
| 23. | Annual Statement |
| 24. | Claims of Creditors |
| 25. | Right to Defer Payment of Benefits |

Exhibit 1 - 14

U001ZZT1

## SECTION 1: SCHEDULE PAGES

POLICY NUMBER:   97525116

| | |
|---|---|
| **Insured** | WILLIAM F JACKSON |
| **Age at Policy Date** | 81 |
| **Sex** | Male |
| **Risk Classification** | Non-Smoker |
| **Additional Ratings** | Not Applicable |
| | |
| **Owner, Beneficiary** | As designated in the application or subsequently changed |
| **Policy Date** | September 19, 2007 |
| **Issue Date** | September 19, 2007 |
| **Death Benefit Option at Issue** | Option A |
| **Life Insurance Qualification Test** | Guideline Premium Test |
| **Total Face Amount** | |

| | |
|---|---|
| Basic Face Amount at Issue | $1,800,000 |
| Supplemental Face Amount at Issue | $0 |
| Total Face Amount at Issue | $1,800,000 |

### Premiums at Issue

| | |
|---|---|
| **Premium Mode** | Annual |
| **Minimum Initial Premium** | $15,987.00 |
| **Planned Premium** | $312,415.00 |
| **Monthly Guarantee Premium** | $7,993.50 |

### Other Benefits and Specifications
#### (See Rider Information for further details regarding riders)

| | |
|---|---|
| **Preferred Loan Amount at Issue** | $0 |
| **Interest Bonus Start Date** | September 19, 2014 |
| **Guaranteed Death Benefit Period** | 5 Policy Years |
| **Withdrawal Charge Period** | Policy Years 1-10 |
| **Rider 1** | Life Plan Options Rider |

**Notice:** The actual premiums paid will affect the Policy Value, the duration of insurance coverage, and the amount of Death Benefit as described in Section 6. **Even if the Planned Premiums shown above are paid as scheduled, they may not be sufficient to continue the policy in force until the death of the Insured.** Unless the Total Cumulative Premium Test is satisfied during the Guaranteed Death Benefit Period, the policy will continue in force until the death of the Insured only if on each Monthly Calculation Date the Net Policy Value, less Policy Debt, during the first 9 Policy Years is at least equal to all due and unpaid Monthly Deductions. After the first 9 Policy Years, the Net Surrender Value on each Monthly Calculation Date must be at least equal to all due and unpaid Monthly Deductions.

Exhibit 1 - 15
U001ZZS1

**SECTION 1: SCHEDULE PAGES (continued)**

POLICY NUMBER:   97525116

## Policy Charges

**Deductions from Premium Payments**

| | |
|---|---|
| **Sales Charge\*** | 10% of first $117,000.00 of premium paid in the first Policy Year |
| | 7% of any premium paid in excess of $117,000.00 in the first Policy Year |
| | 5% of all premiums paid in Policy Years 2 and thereafter. |

\*No sales charge will apply to any loan carried over as part of the initial premium paid for this policy.

**Monthly Deduction** (the following charges are deducted monthly from the Policy Value on each Monthly Calculation Date)

| | |
|---|---|
| **Issue Charge** | $50.00   deducted during the first Policy Year only |
| **Service Charge** | $3.50   guaranteed not to exceed $7.00. |
| **Cost of Insurance** | Determined in accordance with Section 9.  Maximum monthly rates per $1,000 of Net Amount at Risk are shown in Section 2. |
| **Rider Charges** | As hereinafter described in this Section 1 under Rider Information |

**Other Deductions**

| | |
|---|---|
| **Overloan Transaction Charge** | 3.5% of the Policy Value, deducted when the overloan protection feature is exercised, as described in Section 14. |
| **Surrender Charge** | The charges shown in this table are as of the beginning of each Policy Year. These Surrender Charges will reduce on a monthly basis to equal zero over time, as shown in this table. The policy's Surrender Charge is equal to the sum of that shown for the Basic Face Amount and that shown for the Supplemental Face Amount. |

### Table Of Surrender Charges

| Policy Year | Basic Face Amount | Supplemental Face Amount |
|---|---|---|
| 1 | $98,622 | $0 |
| 2 | $93,905 | $0 |
| 3 | $89,365 | $0 |
| 4 | $85,040 | $0 |
| 5 | $80,949 | $0 |
| 6 | $77,083 | $0 |
| 7 | $73,417 | $0 |
| 8 | $69,910 | $0 |
| 9 | $66,498 | $0 |
| 10 | $63,112 | $0 |
| 11 | $59,680 | $0 |
| 12 | $56,111 | $0 |
| 13 | $52,295 | $0 |
| 14 | $48,091 | $0 |
| 15 | $23,166 | $0 |
| 16 | $0 | $0 |
| 17 | $0 | $0 |
| 18 | $0 | $0 |
| 19 | $0 | $0 |
| 20 | $0 | $0 |
| 21+ | $0 | $0 |

We will not charge any Policy Charges after the Policy Anniversary which follows the Insured's 100th birthday.

Exhibit 1 - 16

U001CAS2

## SECTION 1: SCHEDULE PAGES (continued)

POLICY NUMBER:   97525116

### Rider Information

| Rider Description | Rider Issue Date | Benefit Amount | Rider Expiry Date | Rider Charge |
|---|---|---|---|---|
| UR73   Life Plan Option Rider | 09/19/2007 | | | None |

*Rider Charges for subsequent Policy Months are in accordance with those guarantees specified in the rider.

Exhibit 1 - 17
U001ZZS3

## SECTION 1: SCHEDULE PAGES (continued)

POLICY NUMBER:   97525116

### Table of Values

**Refer to your policy provisions for details on the terms and values shown in this table.**

| | |
|---|---|
| Minimum Total Face Amount | $100,000 |
| Minimum Basic Face Amount | $100,000 |
| Policy Loan Interest Rate | 6% |
| Minimum Loan Amount | $500 |
| Minimum Withdrawal Amount | $500 |
| Guaranteed Minimum Interest Rate | 4% |
| Policy Value Benchmark Percentage | 40% |
| Guideline Single Premium | $1,393,305.85 |
| Guideline Level Premium | $263,421.30 |
| Maximum Annual Premium | $1,000,000 |
| Minimum Total Face Amount Decrease | $10,000 |

Exhibit 1 - 18
U001ZZS4

## SECTION 2: TABLE OF RATES

POLICY NUMBER:   97525116

### MINIMUM DEATH BENEFIT PERCENTAGES & MAXIMUM MONTHLY COST OF INSURANCE RATE TABLE

| Attained Age | Minimum Death Benefit Percentage | Maximum Monthly Rates per 1,000 of Net Amount at Risk | Attained Age | Minimum Death Benefit Percentage | Maximum Monthly Rates per 1,000 of Net Amount at Risk |
|---|---|---|---|---|---|
| 81 | 105% | 8.5433 | 91 | 104% | 19.6533 |
| 82 | 105% | 9.3767 | 92 | 103% | 21.0625 |
| 83 | 105% | 10.3158 | 93 | 102% | 22.6358 |
| 84 | 105% | 11.3425 | 94 | 101% | 24.6375 |
| 85 | 105% | 12.4333 | 95 | 100% | 27.4967 |
| 86 | 105% | 13.5667 | 96 | 100% | 32.0458 |
| 87 | 105% | 14.7325 | 97 | 100% | 40.0167 |
| 88 | 105% | 15.9075 | 98 | 100% | 54.8317 |
| 89 | 105% | 17.1075 | 99 | 100% | 83.3333 |
| 90 | 105% | 18.3492 | 100+ | 100% | 0.0000 |

**Basis of Calculations:**  1980 Commissioner's Standard Ordinary Mortality Smoker/Nonsmoker Distinct Table (Age Nearest Birthday) for the Insured's sex and Risk Classification, Age, and 4% effective annual interest rate. The Monthly Factor used in determining Cost of Insurance is 1.0032737.

If this policy is issued on a unisex basis, we will use the 1980 Commissioners' Standard Ordinary Mortality Smoker/Nonsmoker Distinct 80% Male Table (Age Nearest Birthday) for the Insured's Risk Classification, Age, and 4% effective annual interest rate.   The Monthly Factor used in determining the Cost of Insurance is 1.0032737.

Exhibit 1 - 19

## SECTION 3: DEFINITIONS

The term **"Age"** means, on any given date, the age of the person in question at his or her birthday nearest that date.

The term **"Age 100 Anniversary"** means the Policy Anniversary nearest the Insured's 100th birthday.

The term **"Attained Age"** on any date means the Age plus the number of whole years that have elapsed since the Policy Date.

The term **"business day"** means any day that we are open for business.

The term **"due proof of death"** means, a certified death certificate, an order of a court of competent jurisdiction, or any other proof acceptable to us.

The term **"in force"** means the policy has not terminated or otherwise lapsed in accordance with the Grace Period provision.

The terms **"in writing," "written notice,"** and **"written request"** mean a written form signed by you, satisfactory to us and received at our Home Office or Main Administrative Office or such other medium electronic or otherwise that we may from time to time make available.

The term **"Issue Date"** means the date from which the Suicide Exclusion and Incontestability provisions are applied.

The term **"Minimum Initial Premium"** means the minimum premium needed to put the policy in force and is shown in Section 1.

The terms **"Monthly Calculation Date"** or **"Monthly Calculation Day"** mean the date on which monthly deductions are assessed from the Policy Value. The first Monthly Calculation Date is the Policy Date. Subsequent Monthly Calculation Dates are the same days of each month thereafter or, if such day does not fall within a given month, the last day of that month will be used.

The term **"Net Policy Value"** equals the Policy Value less the Policy Debt.

The term **"Net Surrender Value"** equals the Surrender Value less the Policy Debt.

The term **"notice"** means that whenever we are required to give notice to you, it shall be deemed given if we mail it to you and, unless otherwise specified, to the assignee of record, if any, in a postage-paid envelope mailed by first class mail to the last known address of record from our Main Administrative Office. If we mutually agree notice may also be provided by an electronic medium.

The term **"Planned Premium"** means the premium that is selected in the application or as later changed by you for this policy that you intend to be pay on a regular modal basis

The term **"Policy Anniversary"** means the same day and month of each year as the Policy Date. If the day does not exist in a month, the last day of the month will be used.

The term **"Policy Date"** means the date shown in Section 1. Policy Charges are calculated from the Policy Date. Policy Years, Policy Months, and Policy Anniversaries are determined from the Policy Date.

The term **"Policy Debt"** means unpaid loans with accrued interest.

The term **"Policy Month"** means the period from one Monthly Calculation Date up to, but not including, the next Monthly Calculation Date.

The term **"Policy Value"** means the amount equal to the Net Premium credited less an amount not to exceed one month of Monthly Deductions from the Policy Value on the later of the Issue Date or the receipt of the first payment at our Main Administrative Office as shown in Section 1. Thereafter the Policy Value is determined by accumulating with interest the Policy Value for the prior day increased by Net Premiums credited and decreased by withdrawals and, on the Monthly Calculation Date, the Monthly Deductions from Policy Value shown in Section 1.

The term **"Policy Year"** means, with respect to the first Policy Year, the one-year period beginning on the Policy Date up to, but not including, the first Policy Anniversary. Each subsequent Policy Year is the one-year period beginning on a Policy Anniversary up to, but not including, the next Policy Anniversary.

The term **"Preferred Loan"** means any loan that is carried over as part of the initial premium paid for this policy from a previously issued policy plus any loan taken to pay loan interest on the Preferred Loan.

Exhibit 1 - 20
U001ZZR1

The term "**Surrender Value**" means the Policy Value less any applicable Surrender Charges, and less any unpaid Issue charges.

The terms "**we**," "**us**," and "**our**" refer only to the Company.

The terms "**you**" and "**your**" refer only to the owner of this policy as defined in Section 17.

---

## SECTION 4: Qualification as Life Insurance

The provisions of this policy are to be interpreted to ensure or maintain qualification as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of the policy to the contrary. We reserve the right to make any reasonable adjustments to the terms or conditions of this policy, including distributions from the policy to the extent we deem it necessary, if it becomes necessary to maintain qualification as life insurance. This provision should not be construed to guarantee that this policy will receive tax treatment as life insurance or that the tax treatment of life insurance will never be changed by the future actions of any tax authority. To ensure that the policy qualifies as life insurance, one of the following tests will apply to the policy. The test you elected is shown in Section 1, Schedule Pages. Your election cannot be changed after issue. We reserve the right to refuse any premium payments that would cause the policy to fail the test you elected.

**Guideline Premium Limit**
Under the Guideline Premium Limit test, the sum of the premiums paid less a portion of any withdrawals, as defined in the Code, may not exceed the greater of:
- The Guideline Single Premium (as determined for your policy); or
- The sum of the annual Guideline Level Premium to the date of the payment.

If you elected this test, the Guideline Single Premium and the Guideline Level Premium are shown in Section 1. If at any time the premiums received under the policy exceed the amount allowable for such tax qualification, such excess amount shall be removed from the policy as of the date of its payment, together with interest thereon from such date, and any appropriate adjustment in the Death Benefit shall be made as of such date. This excess amount (plus or minus any interest) shall be refunded to you no later than 60 days after the end of the applicable Policy Year. If this excess amount (plus or minus any interest) is not refunded by then, the Total Face Amount under the policy shall be increased retroactively so that at no time is the Death Benefit ever less than the amount necessary to ensure or maintain such tax qualification. In no event, however, will we refuse to accept any premium necessary to prevent the policy from terminating.

**Cash Value Accumulation Test**
Under this test, the net single premium for the future benefits of the contract must always be greater than the Policy Value. The net single premium is that single amount that would provide for the cost of the Death Benefit and any applicable riders under this policy. We reserve the right to modify the Death Benefit Percentages shown in Section 2, retroactively if necessary, to ensure or maintain qualification of this policy as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of this policy to the contrary.

---

## SECTION 5: Total Face Amount

The Total Face Amount is made up of two components: (i) the Basic Face Amount, and (ii) the Supplemental Face Amount, if any. The Total Face Amount remains equal to the Total Face Amount at Issue, shown in Section 1, or as modified according to the terms of this Policy.

**Reduction of Total Face Amount**
You may request a reduction in Total Face Amount at any time after the first Policy Year provided this policy is in force and subject to the Minimum Total Face Amount. Any reduction in the Total Face Amount will be implemented by first reducing any Supplemental Face Amount. Any reduction in the Total Face Amount will be effective on the next Monthly Calculation Date after our approval. Upon a reduction in Total Face Amount, a pro-rata Surrender Charge will be deducted from the Policy Value based on the Policy Year and amount of the reduction in accordance with the Table of Surrender Charges shown in Section 1.

Exhibit 1 - 21

U001ZZR2

## SECTION 6: Death Proceeds

If the Insured dies while the policy is in force, we will pay the Death Proceeds, as described below, upon receipt of due proof of death of the Insured, subject to any applicable provisions of the policy.

If the Insured dies on or after the date we receive a request from you to surrender the policy, no Death Proceeds will be paid. We will pay the amount payable under the Surrenders and Withdrawals provision instead. The Death Proceeds at the death of the Insured are equal to:

(a) the Death Benefit, as described below, in effect on the Insured's date of death; plus

(b) any insurance then in effect on the life of the Insured that is provided by any additional benefit riders; less

(c) any Policy Debt then existing on this policy.

If the Insured dies during the Grace Period, the Death Proceeds payable described above will be modified as follows:

(a) the Death Proceeds will be reduced by any outstanding Policy Charges due; and

(b) the Policy Value used in the calculation of the Death Benefit will be the Policy Value as of the date of death of the Insured.

We will pay interest on any Death Proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment as required by applicable state law. If the state does not specify the interest rate, we will use the rate for Death Proceeds left on deposit with us.

**Death Benefit**
The Death Benefit under this policy will be determined under either Option A or Option B, whichever is then in effect.

Option A: The Total Face Amount on the date of death of the Insured or, if greater, the Minimum Death Benefit as described below.

Option B: The Total Face Amount plus the Policy Value on the date of death of the Insured or, if greater, the Minimum Death Benefit as described below.

If withdrawals are made, the Death Benefit will be reduced by reducing the Total Face Amount if Option A is in effect, or the Policy Value if Option B is in effect.

**Minimum Death Benefit**
The Minimum Death Benefit is equal to the Policy Value on the date of death multiplied by the applicable Minimum Death Benefit Percentage for the Attained Age of the Insured. The Minimum Death Benefit Percentages are shown in Section 2. To the extent that the Net Amount at Risk associated with the Minimum Death Benefit that results from this calculation exceeds our guidelines and limitations that may be in effect, we reserve the right to:

(a) distribute to you a portion of the Policy Value such that the Net Amount at Risk associated with the resulting Minimum Death Benefit does not exceed our guidelines and limitations in effect; or

(b) if we should decide to accept the additional death benefit, require evidence of insurability satisfactory to us.

**Change in Death Benefit Option**
While this policy is in force and prior to the Age 100 Anniversary, you may request in writing to change the Death Benefit Option, subject to the Minimum Basic Face Amount shown in Section 1. If, however, you have exercised the Overloan Protection feature as described in Section 14, the death benefit will be changed to Death Benefit Option A if it is not already in effect. No further changes to death benefit options will be allowed. Any change in Death Benefit Options will be effective on the next Monthly Calculation Date. Any change will be subject to the following:

• Change from Option A to Option B:  the Total Face Amount will be reduced by the Policy Value.

• Change from Option B to Option A:  the Total Face Amount will be increased by the Policy Value.

Any reduction in the Total Face Amount will be implemented by first reducing any Supplemental Face Amount, with no change to the surrender charge schedule of the policy.

If the Supplemental Face Amount is greater than 0, any increase in the Total Face Amount will be implemented by increasing the Supplemental Face Amount. If the Supplemental Face Amount is equal to 0, any increase in Total Face Amount will be implemented by increasing the Basic Face Amount.

Exhibit 1 - 22

U001ZZP3

We will not require evidence of insurability for a change in Death Benefit Options. You are limited to one change in Death Benefit Option per Policy Year.

Any change in Total Face Amount as a result of a death benefit option change will not change the surrender charges for this policy.

---

### SECTION 7: Guaranteed Death Benefit

The Guaranteed Death Benefit feature provides a guarantee during the Guaranteed Death Benefit Period that the Basic Face Amount, any Supplemental Face Amount, and any rider benefits of your policy will not terminate, regardless of Policy Value, if the Total Cumulative Premium Test is met.

**Total Cumulative Premium Test** – In order to pass this test, the total premiums paid by you less partial withdrawals, since policy issue, less policy debt must be at least equal to the sum of all Monthly Guarantee Premiums applicable for each Policy Month since the Policy Date.

The Monthly Guarantee Premium applicable on the Policy Date is shown on the Schedule Page of the Policy, and shall be the same for each Policy Month thereafter. However, if there is a change in the (a) Total Face Amount, (b) the addition, change or termination of a rider, or (c) a change in risk classification, we will modify the Monthly Guarantee Premium. The revised Monthly Guarantee Premium shall then be applicable for the Policy Month in which the change occurs and for each Policy Month thereafter until another change, if any, shall occur.

While the Guaranteed Death Benefit feature is in effect, monthly deductions will continue to be deducted from the Policy Value as provided for under the terms of this Policy. If the Policy Value is insufficient to cover such monthly deduction, such insufficiency shall be carried over as a charge to be deducted from such future Policy Value(s) as may later exist. No interest will accrue on these charges.

---

### SECTION 8: Death Benefit On or After Age 100 Anniversary

Coverage under this policy on or after the Age 100 Anniversary is subject to the conditions specified below.

**Death Benefit**
The Death Benefit will be determined in the same respect as specified in Section 6, except as follows.
- If Death Benefit Option B is in effect, we will change to Death Benefit Option A effective on the Age 100 Anniversary, which means the Total Face Amount will not be increased by the Policy Value.
- The Death Benefit will be equal to the greater of (a) the Total Face Amount on the Date of the Insured's death, or (b) the Policy Value after the Age 100 Anniversary.

**Premiums and Monthly Deductions**
We will cease to take Monthly Deductions specified in Section 1, and we will not accept any further premium payments.

**Credited Interest**
We will continue to credit interest monthly to the Policy Value.

**Policy Debt and Default**
Loan interest will continue to be charged if there is an outstanding loan on the Age 100 Anniversary. The policy will go into default at any time the Policy Debt exceeds the Policy Value, and the Loans provision and the Surrenders and Withdrawals provision will still be in effect.

Exhibit 1 - 23

U001ZZP4

## SECTION 9: Policy Value

**Net Premiums Added**

When we receive your premium payments at our Main Administrative Office, we deduct a Sales Charge which will not exceed the amount shown in Section 1 and add the balance remaining (the Net Premium) to your Policy Value. We will do this before we take any other deductions due on that business day. However, we will add any Net Premiums received before the Policy Date to your Policy Value as of the Policy Date. While a loan exists, we will treat the amounts you pay as premiums unless you request in writing that they be treated as loan repayments. If you instruct us to do so, we will first deduct from such payments the amount of accrued interest on loans and then deduct the amount specified as a loan repayment before applying any balance remaining as a premium payment.

**Monthly Deductions**

A deduction is due and will be taken from the Policy Value as of the Policy Date and as of each applicable Monthly Calculation Date. Monthly Deductions are calculated from the Policy Date. If, at your request, we set the Policy Date to a date which precedes the date on which we receive the initial premium, Monthly Deductions due for the period prior to receipt of the initial premium will be taken on the later of the date we receive the initial premium and the date our underwriters approve issuance of this policy.

Monthly Deductions are due until the Age 100 Anniversary, at which time we will cease to take any further Monthly Deductions as described in Section 8.

The Monthly Deduction for any Policy Month that will be deducted from your Policy Value consists of charges (a) through (e) listed below, each of which will be deducted in the order as listed, where:

    (a)    is the Issue Charge;

    (b)    is the Service Charge;

    (c)    is the sum of the charges for riders which are part of the policy, if any,;

    (d)    is the sum of all charges for any applicable Additional Ratings shown in Section 1; and

    (e)    is the Cost of Insurance Charge, as described below.

**Cost of Insurance Charge**

The rates for the Cost of Insurance Charge as of the Policy Date are based on the sex, if applicable, Age, Risk Classification, Basic Face Amount, Supplemental Face Amount, Net Amount at Risk; and duration that the coverage has been in force for the Insured.

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and such rates will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions. The Maximum Monthly Rates at any Age are shown in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000. Each Cost of Insurance Charge is deducted in advance of the applicable insurance coverage for which we are at risk.

The Cost of Insurance calculation will reflect any adjustment for the Minimum Death Benefit.

We review our Cost of Insurance rates periodically, and may re-determine Cost of Insurance rates at such time on a basis that does not discriminate unfairly within any class of insureds. Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.

**Net Amount at Risk**

The Net Amount at Risk is the amount determined by subtracting (a) from the greater of (b) or (c) where:

    (a)    is the Policy Value at the end of the immediately preceding business day less all charges due on the Monthly Calculation Date;

    (b)    (i) is the Total Face Amount divided by the applicable Monthly Factor shown in the footnote in Section 2 for Death Benefit Option A; or (ii) is the Total Face Amount divided by the applicable Monthly Factor shown in the footnote in Section 2 plus the Policy Value for Death Benefit Option B; and

    (c)    is the amount defined in (a) multiplied by the applicable Minimum Death Benefit Percentage shown in Section 2.

Exhibit 1 - 24

U001ZZP5

### Interest Rate

We will determine the credited interest rate(s) used in the calculation of the Policy Value, based on our anticipation of future investment earnings, mortality, persistency, expense and administrative costs, and taxes. We may, in our sole discretion, change the interest rate(s). Changes in the rate(s) will apply to all policies in the same Risk Classifications. The effective annual interest rate will never be less than the Guaranteed Minimum Interest Rate shown in Section 1. Any interest credited in excess of that computed based upon the Guaranteed Minimum Interest Rate is referred to as "excess interest."

We may credit different interest rates on loaned and unloaned portions of the Policy Value. The rate(s) in effect on a given date for unloaned amounts is referred to as the "current interest rate(s)." The rate in effect on a given date for loaned amounts will be no less than the Policy Loan Interest Rate less 2% nor greater than the Policy Loan Interest Rate. We may credit interest on loaned Policy Value for Preferred Loans at a different rate than the rate credited on loaned Policy Value for non-Preferred Loans. All interest rates are stated as effective annual rates. Interest will be compounded at least monthly to yield the effective annual rate.

### Interest Bonus

On each Monthly Calculation Date beginning on the Interest Bonus Start Date, (shown in Section 1), in addition to interest being credited under the policy, we will also credit an Interest Bonus on amounts in excess of the Policy Value Benchmark Amount, defined as follows.

The Policy Value Benchmark Amount is equal to the Policy Value Benchmark Percentage (shown in Section 1) multiplied by the sum of the Total Face Amount at issue and the insurance amount then in effect on any applicable riders attached to this policy.

The bonus equals the monthly equivalent of the Bonus Interest Rate, as specified in the table below, multiplied by the amount that (a) exceeds (b), where:

   (a) = the lesser of the unloaned portion of the Policy Value and the Total Face Amount, and

   (b) = Policy Value Benchmark Amount.

| Effective Annual Rate on unloaned Policy Value | Bonus Interest Rate |
|---|---|
| At least 4.5% | 1.00% |
| At least 4.25% but less than 4.50% | .50% |
| Less than 4.25% | 0% |

---

### SECTION 10: Premiums

No insurance under this policy will take effect until our underwriters approve issuance of this policy and the conditions specified in the application form have been satisfied, including our receipt of at least the Minimum Initial Premium.

We will process any premium payment subject to the limitations of the life insurance qualification test elected by you, unless one of the following exceptions applies:

   (i)   we will process a payment received prior to the Policy Date as if received on the Policy Date.

   (ii)  we will process the portion of any premium payment for which we require evidence of the Insured's continued insurability on the first business day after we have received such evidence and found it satisfactory to us.

If however, our receipt of any premium payment (or portion thereof) would cause the policy to not qualify as a "life insurance contract" under the federal income tax laws, we will not process such payment (or portion thereof). In addition in the case of certain other situations that could have tax implications, we will process the payment (or portion thereof) on the first business day after we have received satisfactory written instructions from you.

Exhibit 1 - 25

13

U001ZZP6

Subject to these limitations, you may pay additional premiums at any time prior to the Age 100 Anniversary and while this policy is in force. Unless we agree otherwise, maximum premium payments are subject to the Maximum Annual Premium shown in Section 1. If, however, you have exercised Overloan Protection, no further premiums may be paid once Overloan Protection goes into effect. All premiums are payable at our Main Administrative Office or to an authorized agent. You may request a receipt signed by one of our executive officers.

If any premium payment results in an increase in the Death Benefit by more than it would increase the Policy Value, then we will either refund the premium or require evidence of insurability satisfactory to us. To the extent of such evidence, the Incontestability and Suicide Exclusion provisions will apply. We may limit the number and amount of premium payments in any Policy Year. The minimum premium payment that we will accept is $25.

---

## SECTION 11: Grace Period

**During the first 5 Policy Years** - If the Total Cumulative Premium Test is satisfied, as described in Section 7, then the Basic Face Amount, any Supplemental Face Amount, and any rider benefits will remain in effect during the Guaranteed Death Benefit Period. If, however, the Total Cumulative Premium Test is not satisfied, then this policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Policy Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments must be sufficient to increase the Net Policy Value on that Monthly Calculation Date to cover three Monthly Deductions or, if less, the amount necessary to pass the Total Cumulative Premium Test for the next three Policy Months.

**During Policy Years 6 through 9** - This policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Policy Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments must be sufficient to increase the Net Policy Value on that Monthly Calculation Date to cover three Monthly Deductions.

**After the 9th Policy Year** - This policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Surrender Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments must be sufficient to increase the Net Surrender Value on that Monthly Calculation Date to cover three Monthly Deductions.

At least 30 days prior to termination of coverage, we will send notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Main Administrative Office, we will also mail a copy of the notice of the amount due to the assignee on record. When payment is received, any Policy Charges which are past due and unpaid will be immediately deducted from the Policy Value. If the necessary additional premium payments have not been received by the end of the grace period, the policy will terminate. Upon termination of the policy, the remaining Net Surrender Value, if any, will be paid to the Owner. If the Insured dies while the policy is in default, then we will deduct from the proceeds all Monthly Deductions due and unpaid as of the date of the Insured's death. Unless a rider provides otherwise, no riders will be in effect after the policy terminates.

---

## SECTION 12: Policy Termination

This policy will terminate automatically on the earliest of:

(1)  the date the Insured dies;

(2)  the date the grace period expires without the payment of sufficient premium as provided in Section 11; or

(3)  the date the policy is surrendered for its Net Surrender Value.

Exhibit 1 - 26
U001ZZP7

## SECTION 13: Reinstatement

If this policy terminates in accordance with the Grace Period provision, you may reinstate this policy while the Insured is alive within five years from the date the policy goes into default, as specified in Section 11. The policy cannot be reinstated if it has been surrendered for its Net Surrender Value. It also cannot be reinstated if the date of reinstatement is on or after the Age 100 Anniversary. We will not approve a request for reinstatement until we receive at our Main Administrative Office all of the following:

    (1)  a written request for reinstatement;

    (2)  evidence of insurability satisfactory to us;

    (3)  payment or reinstatement of any Policy Debt as of the date of termination, if applicable; and

    (4)  payment of the Reinstatement Premium. The Reinstatement Premium equals the amount that was required to bring the policy out of default immediately prior to termination, plus three Monthly Deductions.

Requirements (2) through (4) must be satisfied within 60 days after the date we receive a written request for reinstatement.

If we approve your request,

    (1)  the reinstatement date will be the date we receive the required payment at our Main Administrative Office;

    (2)  any Surrender Charge will be reinstated to the amount it was at the date of default;

    (3)  the remaining Surrender Charge Schedule, if any, will be the same as on the date of default;

    (4)  the Policy Value on the date of reinstatement, prior to the crediting of any Net Premium paid on the reinstatement, will be equal to the Policy Value on the date the policy terminated.

## SECTION 14: Loans and Overloan Protection

While this policy is in force, and sufficient loan value is available, a loan may be obtained by written request. Each loan must be for at least the Minimum Loan Amount shown in Section 1. A loan may not be taken after you have exercised Overloan Protection. To obtain a loan, we may require a loan agreement from you, since the policy is the only security for the loan. We may defer loans as provided by law or as provided in Section 25. Loans may not be made if the policy is in the grace period as described in Section 11.

**Maximum Loan Value**
The Maximum Loan Value on the Policy Date is equal to 75% of the premiums received. Thereafter, the Maximum Loan Value on any date is equal to the lesser of (a) or (b), where:

    (a) = the Policy Value, projected (with interest and monthly charges) to the next Policy Anniversary, less any applicable Surrender Charge, discounted for interest at the policy loan interest rate; and

    (b) = the current Surrender Value of this policy.

The Maximum Loan Value, however, will not be less than the Preferred Loan Amount plus accrued interest on such amount, but in no event greater than the current Policy Value.

**Available Loan Value**
The available loan value on any date is an amount equal to the Maximum Loan Value less Policy Debt.

Exhibit 1 - 27

U001ZZF

**Loan Interest Charged**

Loan interest will accrue on a daily basis from the date of the loan, and is payable in arrears.

Loans will bear interest at a rate not to exceed the Policy Loan Interest Rate shown in Section 1. Loan interest will be payable on each Policy Anniversary and on the date the loan is settled. In the event that you do not pay the loan interest charged in a Policy Year, such amount will be added to the Policy Debt on the Policy Anniversary. The portion of the loan interest attributable to the Preferred Loan Amount will be reflected as an increase to the Preferred Loan Amount on the Policy Anniversary.

**Loan Repayment**

You may repay the Policy Debt in whole or in part at any time prior to the death of the Insured and while the policy is in force. Subject to any rider, endorsement, or other provisions, while a loan exists, we will treat any amounts you pay as premiums, unless you request in writing that they be treated as loan repayments.

**Overloan Protection**

You have the option of exercising Overloan Protection, in writing, when the following conditions exist on the Monthly Calculation Date:

1.  the Policy Debt exceeds the specified Total Face Amount;
2.  the Policy Debt is equal to 96% of the Policy Value;
3.  the Insured is at least 65 years of Age;
4.  this policy has been in force for at least 15 Policy Years; and
5.  the Guideline Premium Life Insurance Qualification Test is in effect.

If the loan balance is in excess of 96% of the Policy Value, the portion of the loan balance that exceeds 96% of the Policy Value must be repaid at the time that such Overloan Protection is exercised. Overloan Protection will be effective on the Monthly Calculation Date following your written request. Once in effect, Overloan Protection will keep your policy in force and the following changes will automatically take effect.

1.  Any riders then in effect will terminate.
2.  The Death Benefit Option will be permanently set to Death Benefit Option A.
3.  The Total Face Amount then in effect will be reduced to 101% of the Policy Value.
4.  The death benefit will equal the greater of (a) and (b), where:
    (a) = the new Total Face Amount, and
    (b) = the applicable Minimum Death Benefit Percentage shown in Section 2, multiplied by the greater of (i) and (ii), where:
        (i) = the Policy Value, and
        (ii) = the Policy Debt.
5.  No further premium payments will be accepted.
6.  No further withdrawals will be allowed.
7.  No further monthly deductions will be assessed.
8.  No additional loans or loan repayments will be allowed.

Any loan balance will reduce the death benefit payable.  Loan interest will continue to accrue on this policy.

Once you have exercised Overloan Protection, a one-time Overloan Transaction Charge, as shown in Section 1, will be assessed. There is no additional charge for this benefit or for any of the automatic changes that occur pursuant to your election of this benefit.

Exhibit 1 - 28

U001ZZP9

## SECTION 15: Surrenders and Withdrawals

**Surrender of the Policy**

You may surrender this policy upon written request for its Net Surrender Value at any time prior to the death of the Insured. We will determine the Net Surrender Value as of the end of the business day on which we have received at our Main Administrative Office your written request for surrender of the policy. After we receive your written request to surrender the policy, no insurance will be in force.

**Withdrawals**

Once per Policy Month while the Insured is living, you may request a withdrawal of part of the Net Surrender Value, if available. A withdrawal will not be permitted after you have exercised Overloan Protection. An amount equal to the withdrawal and its related pro-rata Surrender Charge, shown in Section 1, will be deducted from the Policy Value, if such withdrawal occurs during the Withdrawal Charge Period shown in Section 1. Withdrawals are subject to the following conditions:

   (a)   each withdrawal must be for at least the Minimum Withdrawal Amount shown in Section 1;

   (b)   after the withdrawal, the remaining Net Surrender Value must be greater than zero;

   (c)   a withdrawal will not be permitted which would reduce the Basic Face Amount below the Minimum Face Amount shown in Section 1.

We will process the withdrawal, thereby reducing the Policy Value, as of the end of the business day on which we receive your written request.

If Death Benefit Option A is in effect on the date of the withdrawal, such withdrawal will reduce, dollar for dollar, the Supplemental Face Amount first, and then the Basic Face Amount. If, however, the Death Benefit in effect on the date of the withdrawal is equal to the Minimum Death Benefit, withdrawals on such day will first reduce the Death Benefit by the amount withdrawn multiplied by the applicable Minimum Death Benefit Percentage until the Death Benefit is equal to the Total Face Amount. Such excess withdrawal amount will then reduce, dollar for dollar, the Supplemental Face Amount first, and then the Basic Face Amount. Your Death Benefit will continue to be determined in accordance with Sections 6 and 8 based upon the revised Total Face Amount of coverage.

If Death Benefit Option B is in effect at the time of the withdrawal, the amount of the withdrawal will be deducted from the Policy Value. The Total Face Amount does not change.

Any benefits provided are not less than that required by law of the state where this policy was delivered. We may defer payment of surrender values as provided by law or as provided in Section 25.

## SECTION 16: Basis of Computations

All of the values under this policy are equal to or more than the minimums required on the Policy Date by the state in which this policy was delivered or issued for delivery. The method of computation of the values under this policy has been filed as may be required with the Insurance Department of the state in which this policy was delivered or issued for delivery.

## SECTION 17: Owner(s) and Beneficiary(ies)

The Insured is the owner of this policy, unless otherwise provided in the application or if ownership is changed by later transfer of ownership. If, however, you are offered consideration by a third party to transfer ownership of your policy or any interest in your policy including a collateral or absolute assignment to such third party, no transfer of ownership shall take effect unless we or one of our affiliated companies first have the right to also offer consideration for your policy. We will require information satisfactory to us that is necessary for us to determine the amount of such consideration we will offer for your policy.

Exhibit 1 - 29

U001ZZQA

While the Insured is living, the owner may exercise all rights provided by this policy or allowed by us. Consent of any beneficiary not irrevocably named or any contingent owner is not required. If there is no surviving Beneficiary upon the death of the Insured, you will be the Beneficiary, but if you were the Insured, your estate will be the Beneficiary.

Any death proceeds that become payable will be paid in equal shares to such beneficiaries living at the death of the Insured as stated in the application or as later changed. Payments will be made successively in the following order:

(a) Primary beneficiaries;

(b) Contingent beneficiaries, if any, provided no primary beneficiary is living at the death of the Insured;

(c) you or your executor or administrator, provided no primary or contingent beneficiary is living at the death of your insured, or in the absence of a beneficiary designation.

Unless otherwise stated, the relationship of a beneficiary is the relationship to the Insured. You may change the beneficiary by written notice filed with us at our Main Administrative Office. When we receive it, the change will take effect as of the date it was signed by you. However, the change will be subject to any payments made or actions taken by us before we received the notice at our Main Administrative Office.

## SECTION 18: Assignment

Except as otherwise provided in this policy, you may, by written notice, assign any interest in this policy without the consent of any person other than an irrevocable Beneficiary. The assignment or a certified copy of it must be filed with us at our Main Administrative Office. When filed, it will bind us as of the date of the assignment, subject to any action taken by us before such filing. We shall not be responsible for the validity or sufficiency of any assignment. The interest of the assignee shall be prior to the interest of any beneficiary not irrevocably named or any contingent owner. An assignee cannot change the beneficiary, owner, or contingent owner.

## SECTION 19: Misstatements

If the age or sex of the Insured has been misstated, we will adjust the Basic Face Amount, any Supplemental Face Amount, and every other benefit to that which would have been purchased at the correct age or sex by the most recent Cost of Insurance charge deducted under Section 9.

## SECTION 20: Suicide Exclusion

If the Insured, whether sane or insane, dies by suicide within two years from the Issue Date, (or within two years from any reinstatement of the policy) and while the policy is in force, our liability shall be limited to an amount equal to the premiums paid on this policy less any Policy Debt owed us and less any withdrawals.

## SECTION 21: Incontestability

This policy shall be incontestable after it has been in force during the Insured's lifetime for two years from the Issue Date, except for fraud, or any provision for reinstatement or policy change requiring evidence of insurability. In the case of reinstatement or any policy change requiring evidence of insurability, the incontestable period shall be two years from the effective date of such reinstatement or policy change. Any premium payment which we accept subject to insurability, and any increase in the Death Benefit resulting from such payment, shall be considered a policy change for purposes of this Section.

While insurance is contestable, we may either rescind the insurance or deny a claim on the basis of:

1. a misstatement in the application or supplemental application for this policy or any face amount increase; or

2. a misstatement in the reinstatement application if there has been a reinstatement of this policy.

Exhibit 1 - 30

If we contest the validity of all or a portion of the face amount provided under this policy, the amount we pay with respect to the contested amount will be limited to the higher of a return of any paid premium required by us for the con tested face amount or the sum of any Monthly Deductions made under this policy for the contested face amount.

## SECTION 22: The Entire Contract

The written application for the policy is attached at issue. This policy, including the Schedule Pages (and any supplements or changes thereto), any riders, amendments, or endorsements to it, and the application for it (and any supplemental applications) constitute the entire contract between you and us. However, additional written requests or applications for policy changes or acceptance of excess payment may be submitted to us after issue and such additional requests may become part of the policy.

We rely on all statements made by or for the Insured in the written application. Each statement made in an application will, in the absence of fraud, be deemed a representation and not a warranty. No statement will be used to void this policy or in defense of a claim under this policy unless:

1. it is contained in the application or in a supplemental application; and
2. a copy of that application is attached to this policy when issued or made a part of this policy when changes become effective.

Any change in the provisions of the policy, including modifying the policy, waiving any of its conditions, or making an agreement for the Company, to be in effect, must be in writing and signed by one of our executive officers and countersigned by our registrar or one of our executive officers. We have the right to correct any clerical errors in this policy, or in our administration of the policy.

## SECTION 23: Annual Statement

Within 30 days after each Policy Anniversary, we will send you, without charge, a report for each Policy Year which includes:

1. the current Policy Value, Death Benefit, Total Face Amount and Surrender Value;
2. any withdrawals, premiums paid, interest credited and charges made during the year;
3. any outstanding loans and new loans and loan repayments made during the year; and
4. any other information required by the insurance supervisory official of the state in which this policy was delivered.

You have the right to request an illustrative report at any other time. We may charge a reasonable fee, not to exceed $25, for the report.

We will provide you, on written request, a projection of illustrative future benefits and values under your policy. We will provide one report annually without charge. For additional reports you request, we have the right to charge a reasonable service fee, not to exceed $50. We may limit the number of such projections in any Policy Year.

## SECTION 24: Claims of Creditors

The proceeds and any income payments under this policy shall not be subject to the claims of creditors and shall be exempt from legal process, levy or attachment to the extent allowed by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

## SECTION 25: Right to Defer Payment of Benefits

We reserve the right to defer payment of Net Surrender Values, withdrawals, and policy loans, for up to six months, except when used to make a premium payment.

Exhibit 1
00010A-C

# Life Plan Options Rider

This rider is part of the policy to which it is attached.  Except as stated in this rider, it is subject to all of the provisions contained in the policy.

## DEFINITIONS

Option Review Period
The 90-day period immediately preceding the 5th, 10th and 15th Policy Anniversaries.

Individual Term Life Rider
As used in this rider form "Individual Term Life Rider" refers to any of the following riders: Individual Term Rider, Individual Term Insurance Rider, Policy Term Rider, Policy Term Insurance Rider, Phoenix Individual Edge Term Rider, or the Variable Policy Term Rider.

## OPTION BENEFITS

Increased Coverage Determination without Medical Exam
Policies that include both this rider and the Individual Term Life Rider are eligible during each Option Review Period, while both such riders are in effect, for an increase in their term insurance rider amount up to a maximum lifetime increase of $1,000,000, with underwriting and our agreement to such increase determined without the inconvenience of an additional medical exam.  Our other ordinary underwriting rules will continue to apply and thus the increase in coverage is still subject to our normal underwriting approval.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- The insured must be attained age 65 or younger on the last day of the Option Review Period.
- The risk classification of the insured must be standard through Table D (200%) at original issue of the basic policy.
- The insured must be alive and meet our underwriting requirements at the time of your request for the increase in term rider face amount.
- The Individual Term Life Rider must either already be attached to the policy or then currently approved and available for sale in the state of applicable jurisdiction.
- There is a maximum lifetime increase of $1,000,000 per insured life.

Reduced Coverage without Surrender Charge
During each Option Review Period you may request a decrease in the face amount of the policy without our assessment of the partial surrender charge that, under the terms of your basic policy, would otherwise apply.  In such case the surrender charge remaining under the policy will continue to be calculated as if such decrease in face amount had not been made.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.
- Total option reductions of the basic policy face amount may not exceed the lesser of 50% of the initial basic policy face amount or $5,000,000 in combined aggregate of all option reductions for all Our policies on the same insured.

UR73

Exhibit 1 - 32

Exchange for Annuity without Surrender Charge

During each Option Review Period beginning with the 90-day period preceding the 10th policy anniversary, you may request that the policy be surrendered as part of an exchange request to an eligible annuity offered by us. In such an exchange, we would not assess the surrender charge that would otherwise apply. In such case, the new annuity will reflect the usual surrender charges that would ordinarily apply for new business.

Other conditions that apply to this option are as follows:
- The basic policy face amount must be at least $1,000,000 at original issue of the basic policy.


## TERMINATION OF THIS RIDER

This rider will terminate on the first of any of the following events to occur:

1. exercise of the Exchange for Annuity without Surrender Charge Option;

2. the 15th policy anniversary;

3. termination of the basic policy.


PHL Variable Insurance Company

*John M. Beers*

Secretary

**Final Steps to Make Your Policy Effective**

In order to place your policy in force, you must:

1. Review, complete and mail to Phoenix the
   Policy Acceptance Form in this section

2. Send Phoenix any premiums still due

**Checklist for Policy Acceptance Form**

As you fill out the form, make sure it includes:

- Date signed
- State where the contract was signed
- Signature of the insured
- Signature of the owner
  (if different from the insured)
- Witness signature

**Final Step**

Detach the white copy of the form and mail it back to
Phoenix in the enclosed, self-addressed envelope.

 **PHOENIX**

P.O. Box 8027
Boston, MA 02266-8027

Underwriting Service Center

30 Dan Road, Suite 8027
Canton, MA 02021-2809

For Overnight Delivery

**Policy Acceptance Form**

Company is defined as indicated below:

☐ Phoenix Life and Annuity Company
☒ PHL Variable Insurance Company

| Agency: E3000 | Insured(s): WILLIAM F JACKSON |
|---|---|
| Policy Number: 97525116 | |

## DECLARATION:

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a Health Statement Form for that insured. **PLEASE NOTE: Home Office approval of the Health Statement Form is necessary before the policy is in effect.**

**AMENDMENTS:** The application for Policy No. 97525116   is amended as follows:

**Policy Option A is not applicable to this plan of insurance.**
**The owner and beneficiary is Jackson Family 2007 Irrevocable Trust Dated October 3, 2007 James Joseph Smith As        Trustee.**
**The policy is issued without Living Benefit Rider.**
**The premiums are payable Annually.**
**Telephone/Electronic Authorization is not applicable to this plan of insurance.**

**ENDORSEMENTS:**

**Delivery expiry is 1/15/2008 on policy 97525116.**

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If a Health Statement Form is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize _____ to hold such policy on my behalf.

| Date | _____ | Insured(s) | _____ | ☐ |
| Signed at | _____ | | _____ | ☐ |
| Witness | _____ | | _____ | ☐ |
| Owner | _____ | | _____ | ☐ |
| Owner | (If other than Insured) | | _____ | ☐ |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

**AGENT:** ORIGINAL to Underwriting and Issue, YELLOW copy to Agent, PINK copy to remain with policy.

Exhibit 1 - 35

**PHOENIX**   PO Box 8027
Boston MA 02266-8027

For Overnight Delivery
PHL Variable Insurance Company
30 Dan Road, Suite 8027
Canton MA 02021-2909

**Application for Life Insurance**
**Part I**

# ORIGINAL

Company is defined as indicated below: (check one)
☐ Phoenix Life Insurance Company   ☒ PHL Variable Insurance Company

## Section I – Proposed Insured Information

| Name (First, Middle, Last) | | Sex | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|
| William F. Jackson | | ☒ M  ☐ F | 03-20-26 |

U.S. Citizen    Earned Income    Net Worth    Other Income

Email Address

| Current Employer | Years of Service | Current Occupation |
|---|---|---|
| Retired | | |

| Employer Street Address | City | State | ZIP Code | Employer's Telephone # |
|---|---|---|---|---|
| | | | | ( ) |

Have you used tobacco or nicotine products in any form in the last 10 years? ☐ Yes  ☒ No
a. If "Yes", check the product(s) used: ☐ Cigarettes ☐ Cigars, Pipes, Snuff, Smokeless or Chewing Tobacco, ☐ Nicotine Patch or Gum
b. If "Yes", check where appropriate: ☐ Use Currently ☐ Date Quit (mm/yyyy)

## Section II – Ownership (Select one, If B or C is elected, complete appropriate sections)

☒ A. Insured   ☐ B. Partnership   ☒ C. Other (If Owner is a Trust, complete Certification of Trust Agreement)

| Owner's Name (First, Middle, Last) | Social Security Number/Tax ID | Date of Birth (mm/dd/yyyy) | Relationship to Proposed Insured |
|---|---|---|---|
| Jackson Family 2007 Irrevocable Trust | | | |

| Owner's Street Address (include Apt #) | City | State | ZIP Code | Home Telephone # |
|---|---|---|---|---|
| | | | | |

If Owner is a Partnership - list all partners. If there is a general partner, complete Partnership Authorization form.
Name(s) of All Partner(s) (First, Middle, Last)

| Employer's Street Address | City | State | ZIP Code |
|---|---|---|---|
| | | | |

Email Address

## Section III – Beneficiary Designation

Unless otherwise specified, payments will be shared equally by all primary beneficiaries who survive the Proposed insured or if none, by all contingent beneficiaries who survive the Proposed insured. Only the Owner has the right to change the beneficiary(ies) unless otherwise stated.

| Primary Beneficiary(ies) Name(s) (First, Middle, Last) | Date of Birth (mm/dd/yyyy) | Social Security # or Tax ID# (if available) | Relationship to Proposed Insured | % Share |
|---|---|---|---|---|
| Jackson Family 2007 Irrevocable Trust; James J. Smith Trustee | | | Trust | 100 |

| Contingent Beneficiary(ies) Name(s) (First, Middle, Last) | Date of Birth (mm/dd/yyyy) | Social Security # or Tax ID# (if available) | Relationship to Proposed Insured | % Share |
|---|---|---|---|---|
| | | | | |

OL4250

1 of 6

1-06

Exhibit 1 - 36

## Section IV - Coverage Applied For

Plan of Insurance

PAUL III   Return of Premium

| | |
|---|---|
| Basic Face Amount | $ 1,800,000 |
| Supplemental Face Amount $ | |
| Total Face Amount | $ 1,800,000 |

## Section V - VARIABLE/UNIVERSAL PLANS of Insurance - Riders and Features

First Year Anticipated, BILLED Premium (Excluding 1035 Exchange, Lump Sum Funds, etc.)   $ 312,415.00

Subsequent Planned Annual Premium   $ 1,144,934

$ 312,415.00  Through year 7  then  through year 10

☐ Disability Waiver of a Specified Amount

Amount $_____

☐ Accidental Death Benefit Rider

☐ Alternate Surrender Value Rider

☐ Life Plan Options Rider

☐ Child's Term Rider

☐ Family Term Rider

☐ Living Benefit Rider

☐ Guaranteed Death Benefit Rider

☐ Guaranteed Extension Rider

☐ Cash Value Accumulation Rider

☐ Age 100 + Rider

☐ Individual Term Rider $_____

☐ Increasing Term Rider $_____

☐ Other _____

☐ Other _____

☐ Other _____

**Death Benefit Option:** (check one) If none checked, Option 1 will apply.

☒ Option 1 Level Face Amount

☐ Option 2 Increasing Face Amount

**Face Amount Increase Options:**

☐ _____% percentage increase

☐ $_____ Fixed Dollar Increase

☒ Increase Equal to Premiums Paid

**Policy Option:** (check one) If none checked, Option A will apply.

☒ Policy Option A

☐ Policy Option B

☐ Policy Option C

☐ Guaranteed Minimum Withdrawal Benefit

**Life Insurance Qualification Test:** (Check One) If none checked, Guideline Premium will apply.

☒ Guideline Premium Test

☐ Cash Value Accumulation Test

### Temporary Money Market Allocation

If the state of issue does not require refund of premium during the Right To Cancel Period, but you prefer to temporarily allocate your premiums to the Money Market subaccount until the end of the Right to Cancel Period, as stated in the policy, indicate: ☐ Yes  ☐ No

### Telephone/Electronic Authorization

I will receive this privilege automatically. By checking "Yes", I am authorizing and directing the Company to act on telephone or electronic instructions from my licensed agent who can furnish proper identification. The Company will use reasonable procedures to confirm that these instructions are authorized and genuine. As long as these procedures are followed, the Company and its affiliates and their directors, trustees, officers, employees, representatives and/or agents, will be held harmless for any claim, liability, loss or cost.  ☒ Yes  ☐ No

### Electronic Delivery Authorization

By checking "Yes," I am authorizing the Company to provide my statements, prospectuses and other information electronically if available. I understand that I must have Internet access to use this service and there may be access fees charged by the Internet service provider.

☐ Yes  ☐ No

### Section VI - Suitability

Do you understand that if you have purchased a Variable Life Policy that the Death Benefit may be variable or fixed under certain conditions and that the Death Benefit and Cash Values under any Variable Policy may increase or decrease in amount or duration based on the investment experience of the underlying subaccounts? ☐ Yes  ☐ No

If you are purchasing a Variable Life Policy, do you believe it is suitable to meet your financial objectives? ☐ Yes  ☐ No

If I have purchased a Variable Life Policy, I confirm that I have received the prospectus for that policy and its underlying funds.

Illustrations of benefits including death benefits, policy values and cash surrender values are available on request.

Exhibit 1 - 37

## Section VI - Mode of Premium Payment

☒ Annual      ☒ Quarterly      ☐ Semi-Annual
☐ Monthly (Variable Life Insurance only)      ☐ PCS (Phoenix Check-O-Matic Service)
         Minimum Monthly Check for Each Service - $25.00

Multiple Billing Option - Give # or Details _____
☐ List Bill    ☐ Employee Insurance Counselling Service (EICS)    ☐ Salary Allotment · ☐ Pension    ☐ Money Purchase Pension
☐ Other _____

**If electing PCS, complete the following:**
Existing Policy Number or PCS File Number _____
**Authorization Agreement for Preauthorized Payments**
I (we) hereby authorize the Company (Note: Company is defined as indicated on page 1 of application) to initiate debit entries to my (our) checking account and the depository named below.
**Information for New Account**
Attach a void check to furnish encoding details.
If the depositor's name is not imprinted on the check, fill it in here exactly as it appears in the bank records.

**Attach Void Check Here**

Signature of depositor (if different from owner) _____

Send premium notices to: (in addition to owner)
☐ Insured at:    ☐ Home Address    ☐ Business Address    ☐ Other
Name (First, Middle, Last) _____
Street Address _____
City _____ State _____ ZIP Code _____ Relationship to Owner _____

## Section VII – Existing Life Insurance

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Are there any life insurance policies or annuity contracts, owned by, or on the life of, the applicant(s) or the insured(s) or the owner(s) or the annuitant? |
| ☐ | ☒ | 2. | With this policy, do you plan to replace (in whole or in part) now or in the future any existing life insurance or annuity contract in force with this policy? |
| ☐ | ☒ | 3. | Do you plan to utilize values from any existing life insurance policy or annuity contract (through loans, surrenders or otherwise) to pay any initial or subsequent premium(s) for this policy? |

For all "Yes" answers above, please provide the following information. **If no coverage inforce, check here ☐**

| Company | Issue Date (mm/yyyy) | Plan | Amount | Pers/Bus | Replacing |
|---------|----------------------|------|--------|----------|-----------|
| | | | | | |
| | | | $ | ☐ ☐ | ☐ ☐ |
| | Total Life Insurance in Force | | $ ███ | | |

OL426D                  3 of 6                  1-06

Exhibit 1 - 38

## Section VIII – Additional Information

Give full details for all "Yes" answers below. If necessary, use an additional piece of paper and please sign it.

☐ Yes ☒ No 1. Is non-recourse premium financing or any other method being utilized to pay premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for?

☐ Yes ☒ No 2. Have you ever applied for life, accident, disability or health insurance and been declined, postponed, or been offered a policy differing in plan, amount or premium rate from that applied for? (If "Yes," give date, company and reason).

Date (mm/dd/yyyy):                    Company:                    Reason:

☒ Yes ☐ No 3. Are you negotiating for other insurance? (If "Yes," name companies and total amount to be placed in force.)

☐ Yes ☒ No 4. Do you intend to travel or reside outside of the United States or Canada?
(If "Yes," state where, how long and purpose).

Location City, Country:                    Purpose:                    How Long: (Specify weeks, months, years)

☐ Yes ☒ No 5. Have you flown during the past 3 years as a pilot, student pilot or crew member or do you plan to do so? (If "Yes," complete Aviation Questionnaire).

☐ Yes ☒ No 6. Have you participated in the past 3 years or plan to engage in any extreme sport activities such as motorized vehicle racing, parachute jumping, underwater diving, or any other extreme avocation? (If "Yes," complete Avocation Questionnaire).

☐ Yes ☒ No 7. Have you ever been convicted of a felony? (If "Yes," give details).
Details:

☐ Yes ☒ No 8. Have you ever been convicted of driving under the influence of alcohol or drugs, or had your driver's license been suspended or revoked, or had greater than 2 moving violations in the past 3 years? (If "Yes," give details)
Details:

☐ Yes ☒ No 9. Is there an intention that any party, other than the Owner, will obtain any right, title or interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?

## Section IX – Medical Transfer Statement *(Complete when submitting medical examinations of another insurance company.)*

I request that Phoenix review and consider the exam conducted by the Life Insurance Company listed below in evaluating my application. I authorize Phoenix to receive and review such application(s), and authorize my producer, broker or other life insurance company to provide such application to Phoenix.

1. Name of the insurance company for which examination(s) was made    *Phoenix Ins Com.*

2. Date of examination (mm/dd/yyyy)    *05/07/07*

3. To the best of your knowledge and belief, are the statements in the examination true, accurate and complete as of today? ☒ Yes ☐ No
If "No", please explain.

4. Have you consulted a medical doctor or other practitioner since the above examination? *(If "Yes", complete Section X)*    ☐ Yes ☒ No

OL4250                                                       4 of 6                                                       1-06

Exhibit 1 - 39

**Section X - Medical History** (Not necessary to complete if medical or paramedical exam has been ordered)

Have you ever had, or been told by a physician or other health care provider that you have:

Please provide details of "Yes" answers (include question number, diagnosis, date of occurrence, current status, hospital or treating physician's name and address). Use Application Part II Addendum if additional space is necessary to record all details.

1. High blood pressure or hypertension?
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling of the ankles, or undue shortness of breath?
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrillation, heart rhythm abnormality, heart murmur, congenital heart disease or valvular heart disease?
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins?
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any other lung disease?
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischemic attack (TIA), tremor, neuropathy, weakness, paralysis, Parkinson's disease, memory loss, dementia, or any other disease of the brain or nervous system?
7. Depression, bipolar disorder, schizophrenia, anxiety, or other psychiatric illness?
8. Arthritis, lupus, or any musculoskeletal or skin disorder?
9. Ulcers, abdominal pain, colitis, Crohn's disease, gall bladder disease, liver disease, hepatitis, jaundice, pancreatitis, or any other disease of the gastrointestinal system?
10. Diabetes, kidney disease, kidney stones, bladder disorder, prostate disorder, protein or blood in the urine?
11. Endocrine disorder, including disorder of the thyroid, parathyroid, adrenal, or pituitary glands?
12. Anemia, bleeding or clotting disorder, or any other disorder of the blood (excluding Human Immunodeficiency Virus) or bone marrow?
13. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease?

14. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals?
15. Have you ever been treated for alcoholism or been advised to limit or stop your use of alcohol?
16. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or any prescription drug except in accordance with a physician's instructions?
17. Have you ever been a patient in any hospital, treatment center, or similar facility within the last 10 years?
18. Have you had, or been advised to have, any surgery, X-rays, electrocardiograms, blood studies (excluding Human Immunodeficiency Virus or Acquired Immune Deficiency Syndrome test), or other tests within the last 5 years?
19. Other than above, have you had any other physical or psychological disorder or been treated by a physician or other health care provider for any reason within the past 5 years?

Phoenix reserves the right to require additional medical information, medical examination or testing to complete the underwriting process.

Exhibit 1 - 40

## Section XI - Authorization To Obtain Information

I authorize any licensed physician, health care practitioner, hospital, medical laboratory, clinic or other medically-related facility, insurance company or the Medical Information Bureau (MIB), having any records or knowledge of me or my health, to provide any such information to Phoenix Life Insurance Company (Phoenix), its affiliated insurers or its reinsurers. The information requested may include information regarding diagnosis and treatment of physical or mental condition, including consultations occurring after the date this authorization is signed. I authorize any of the above sources to release to Phoenix or its reinsurers any of my information relating to alcohol use, drug use and mental health care.

Medical information will be used only for the purpose of risk evaluation and determining eligibility for benefits under any policies issued. Phoenix may disclose information it has obtained to others as permitted or required by law, including the MIB, our reinsurers and other persons or entities performing business or legal services in connection with this application, any contract issued pursuant to it or in connection with the determination of eligibility for benefits under an existing policy. Information that is not personally identifiable may be used for insurance statistical studies.

To facilitate rapid submission of information, I authorize all of the above sources, except MIB, to give such records or knowledge to any agency employed by Phoenix to collect and transmit such information.

I authorize consumer reporting agencies, insurance companies, motor vehicle departments, my attorneys, accountants and business associates and the MIB to provide any information to Phoenix or its reinsurers that may affect my insurability. This may include information about my occupation, participation in hazardous activities, motor vehicle record, foreign travel, finances, and other insurance coverage in place.

I acknowledge that I have received a copy of the Notice of Information Practices, including information about Investigative Consumer Reports and the Medical Information Bureau. I authorize the preparation of an Investigative consumer report. I understand that upon written request, I am entitled to receive a copy of the investigative consumer report.

This authorization shall continue to be valid for 30 months (24 months in Colorado, Iowa, Kansas, Kentucky and Oklahoma) from the date it is signed unless otherwise required by law. A photocopy of this signed authorization shall be as valid as the original. This authorization may be revoked by writing to Phoenix prior to the time the insurance coverage has been placed in force. I understand my authorized representative or I may receive a copy of this authorization on request. ☒ I do ☐ I do not (check one) require that I be interviewed in connection with any investigative consumer report that may be prepared.

## Section XII – Signature

I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

I understand that 1) no statement made to, or information acquired by any Licensed Producer who takes this application, shall bind the Company unless stated in Part I and/or Part II of this application, (not applicable in ND and SD) and 2) the Licensed Producer has no authority to make, modify, alter or discharge any contract thereby applied for.

I understand and agree that the insurance applied for shall not take effect unless and until each of the following has occurred: 1) the policy has been issued by the Company; 2) the premium required for issuance of the policy has been paid in full during the lifetime of the insured; 3) all the representations made in the application remain true, complete and accurate as of the latest of such dates; 4) the insured is alive when the policy is issued, and 5) there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application.

I understand that if there is any change in my health or physical condition, or if I visit a physician or am hospitalized, subsequent to the date I complete the application or provide any information to be contained in the application, I will inform the Company as soon as possible.

Under penalty of perjury, I confirm that 1) the Social Security or Tax Identification Number shown is correct, and 2) that I am not subject to back-up withholding. If I have applied for the Living Benefit Rider, I confirm that I have received a copy of the disclosure form, Summary of Coverage for Accelerated Benefit Rider.

| Proposed Insured's Signature | State Signed In | Witness Signature (Must be signed in presence of Proposed Insured) | Date (mm/dd/yyyy) |
|---|---|---|---|
| *William F Jackson* | FL | *Elsa Clark* | 10/10/07 |
| Owner's Signature (if other than Proposed Insured) *trustee Jam R Park* | State Signed In CA | Witness Signature (Must be signed in presence of Owner) *Kimber L. Smith* | Date (mm/dd/yyyy) 10/15/07 |
| Parent's Signature (for minor insured) | State Signed In | Witness Signature (Must be signed in presence of Owner) | Date (mm/dd/yyyy) |

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement may be guilty of insurance fraud as determined by a court of competent jurisdiction. (Not applicable in AR, DC, FL, LA, ME, MA, NJ, NM, NY, OH, OR, PA, TX, VA).

In AR and LA any person who knowingly presents a false or fraudulent claim for payments of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

In DC, WARNING: IT IS A CRIME TO PROVIDE FALSE OR MISLEADING INFORMATION TO AN INSURER FOR THE PURPOSE OF DEFRAUDING THE INSURER OR ANY OTHER PERSON, PENALTIES INCLUDE IMPRISONMENT AND/OR FINES. IN ADDITION, ANY INSURER MAY DENY INSURANCE BENEFITS IF FALSE INFORMATION MATERIALLY RELATED TO A CLAIM WAS PROVIDED BY THE APPLICANT.

In OH, any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured; and that he/she is qualified and authorized to discuss the contract herein applied for.

| Licensed Producer's Name (Print First, Middle, Last) | | Licensed Producer's Email Address | |
|---|---|---|---|
| Jacob W Mutz | | Jacob Mutz@gmail.com | |
| Licensed Producer's Signature *Jacob Mutz* | Date (mm/dd/yyyy) 10/17/07 | Licensed Producer's I.D. # PENDING | Licensed Producer's Telephone # (352) 328-4878 |

04250      *Reports to UNIC 316300*  6 of 6    *0312009*    1-06

Exhibit 1 - 4

 **PHOENIX**

Phoenix Life Insurance Company and its subsidiaries
PO Box 8027
Boston MA 02266-8027

**Application Part II**

Examination to be made in private. Please read all questions to applicant. Answers to be recorded in the examiner's own handwriting.

NAME OF PROPOSED INSURED
William F Jackson

SEX

| 1. Family Record | Age | Health | Age At Death | Cause of Death |
|---|---|---|---|---|
| Father | | | | |
| Mother | | | | |

**Please Check (✓) Appropriate**

2. To your knowledge, have any of your parents, brothers or sisters had diabetes?

3. A. Have you ever been treated for alcoholism or any drug habit?
   B. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens or any prescription drug except in accordance with a physician's instructions?

4. Have you sought treatment or consulted a physician for any reason in the last 5 years, including routine examinations or check-ups? (Give full details.)

5. To the best of your knowledge have you ever had, or been treated by any physician or other practitioner that you had:
   A. High blood pressure?
   B. Pain, pressure, or discomfort in the chest, palpitation, swelling of the ankles, or undue shortness of breath?
   C. Heart disease, heart murmur, angina pectoris, or coronary disease?

   E. Pneumonia, pleurisy, asthma, tuberculosis, chronic cough, or any other disease of the lungs?
   F. Epilepsy, fainting spells, concussion, skull fracture, severe headaches, dizziness, mental disorder or nervous breakdown?
   G. Indigestion, stomach or duodenal ulcer, colitis, or other disease of the intestines or rectum, gall bladder disorder, jaundice, hepatitis, or liver disorder?

   or albumin, sugar, pus, or blood in the urine?
   I. Disease of the reproductive organs, prostate trouble, abnormal menstruation, complicated pregnancies or disease of the breasts?

   glands, tumor, polyp, cancer or skin disease?
   K. Disease or disorder of blood or blood formation?
   L. Been tested positive for exposure to the HIV infection or diagnosed as having ARC or AIDS caused by the HIV infection or other sickness or condition derived from such infection?
   M. Paralysis, deformity, or any injury or disorder of the

   N. Other than above, any physical or mental disorder, operation, or injury within the past 5 years?

The foregoing statements are full, complete, and true to the best of my knowledge and belief.

Any person who knowingly and with intent to injure, defraud, or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

| DATED AT (City and State) LAKELAND   FL | DATE   05-07-2007 |
|---|---|
| WITNESS (Examiner)   James P. Anderson  MD | PROPOSED INSURED (SIGN FULL NAME)   William F Jackson |

OL1218PL.1

2-05

Exhibit 1 - 42

PARAMEDICAL EXAMINATION – Complete questions 1-11.
MEDICAL EXAMINATION BY PHYSICIAN – Complete all questions.

**EXAMINER'S STATEMENT:**

I certify that I have carefully examined William F Jackson and that the applicant's responses to all questions on both sides of this form are accurately recorded.   (print name of person examined)

0005200049

Exhibit 1 - 43



**Universal Life Insurance Policy**
**Flexible Premiums**
**Death Benefit payable at death of Insured**
**Nonparticipating – not eligible for dividends**
**Benefits, premiums, and the Risk Classification are shown in Section 1**

Exhibit 1 - 44

U001ZZB1

EXHIBIT 2

 **PHOENIX®**

Phoenix Life Insurance Company
PHL Variable Insurance Company
PO Box 8027
Boston MA 02266-8027

**Certification and Acknowledgement
of Trust Agreement
for Death Claim Settlement**

Policy Number:

Name of Insured:

Name of Trust:

Date of Trust:

Name of Grantor/Settlor:

Name of Trustee(s)

Mailing Address of Trust:

Length and nature of relationship between the Trustee and Grantor/Settlor:

Trust Tax Identification Number:

Situs (State Governing law) of Trust:

Relationship between Grantor and Situs of Trust

1. Has the Situs been changed by the Trustee and/or Trust Beneficiaries Since the Date of Trust?. . . . . . . . ☐ Yes ☐ No

2. Does the Trust contain a Spendthrift Provision (provision that prohibits a beneficiary or creditor of a beneficiary from anticipating or attaching an interest in the trust)?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

If No, please explain strategy for leaving this provision out.

_____

_____

_____

3. Please identify all Trust Beneficiaries and any and all persons or entities with any right, title, or interest in the beneficial interest of the Trust and describe the relationship between the Insured and any person or entity named:

_____

_____

If any trust is identified, please identify the name of the trust, its trustee, its grantor/settlor, and beneficiaries.

_____

_____

_____

4. Please identify all persons or entities that will receive disbursements or payments from the Trust as a result of the payment of Policy proceeds to the Trust.

_____

_____

_____

OL4388

7-10

Exhibit 2 - 45

5.  Has there been any change in Trust Beneficiaries since the Date of Trust? . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No
If Yes, please identify the changes.

_____

_____

_____

6.  Has any Trust Beneficiary sold, assigned, or otherwise transferred his/her interest in the Trust to anyone? . . □ Yes  □ No
If Yes, please identify the date of sale and the person or entity to which the interest was transferred.

_____

_____

_____

7.  Is any Trust Beneficiary granted a Power of Appointment (ability to appoint property during life or after death)? . . □ Yes  □ No
If Yes, is the Power of Appointment limited to persons who  (a) are related to the Insured by blood or law,  (b) have a
substantial interest in the Insured engendered by love and affection, or  (c) hold a lawful and substantial economic interest
in the continued life of the Insured? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No

8.  Has any Trust Beneficiary exercised a Power of Appointment? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No
If Yes, please list every individual or entity that has been appointed property.

_____

_____

_____

9.  Are you aware of any other trusts to which the Insured was the Grantor/Settlor? . . . . . . . . . . . . . . . . . . . . □ Yes  □ No
If Yes, please identify the name of the trust, its trustee and its beneficiaries.

_____

_____

If any trust is identified, please identify all beneficiaries of that trust.

_____

_____

10. Can the Trust be merged or consolidated with another trust? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No
If Yes, has the Trust been merged or consolidated with another trust? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No
If Yes, please identify the name of the trust, its trustee, and its beneficiaries.

_____

_____

_____

11. Does the Trust allow for the creation of subsidiary trusts? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No
If Yes, have any subsidiary trusts been created? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . □ Yes  □ No
If Yes, please identify the name of the trust, its trustee, and its beneficiaries.

_____

_____

_____

12. Did any party other than the Insured fund any contribution to the Trust's capital/principal? . . . . . . . . . . . □ Yes  □ No
If Yes, please identify the source of all capital/principal contributions to the Trust.

_____

_____

_____

Exhibit 2 - 46

13. Did any party other than the Trust fund the payment of any Policy premiums?. . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No
If Yes, please identify the source of the funds.

_____

14. Are you aware of any loans, notes, or financing agreements that in any way relate to the payment of Policy premiums
   or capital/principal contributions to the Trust? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No
If Yes, please identify the parties to the agreement, the terms of the agreement, and the total amount of principal, interest,
and fees that are currently outstanding.

_____

_____

_____

15. Are you aware of any option agreements (including without limitation a put or call agreement) involving the Trust, any
   subsidiary trust, any trust with which the Trust has been merged, any other trust identified above, or any other party having
   any interest in any of the trusts identified above, the Policy or the Policy proceeds?. . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No
If Yes, please identify the parties to the agreement, the terms of the agreement, and whether or not the option has been exercised.

_____

_____

_____

16. Have any beneficial interests under the Trust, any subsidiary trust, any trust with which the Trust has been merged, or
   any other trust identified above been established for persons who  (a) are not related to the Insured by blood or law, (b)
   do not have a substantial interest in the Insured engendered by love and affection, or  (c) do not hold a lawful and
   substantial economic interest in the continued life of the Insured? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes  ☐ No

The undersigned trustee(s) hereby represents, declares, and acknowledges that:
- The trust is _____ revocable and in full force and effect.
   _____ irrevocable and in full force and effect.
- Pursuant to the terms of the agreement, the trustee(s) has the right to purchase insurance and securities.
- The Insurer is not responsible for inquiring into the terms of the Trust and shall not be charged with knowledge of its provisions.
- The Insurer may rely on the signatures of the trustee(s) in the exercise of any Policy rights hereunder and is fully
   discharged from any liability as the result of such reliance.
- All statements contained herein are true, correct and complete to the best of the Trustee's knowledge.

Please provide a copy of (a) Trust agreement and (b) any documents relating to "Yes" answers indicated above.

### Generation Skipping Transfer Tax Information - THIS MUST BE COMPLETED FOR PAYMENT

I/We the undersigned, on oath, deposes and states as follows with respect to the possible application of the Generation
Skipping Transfer (GST) tax to the death benefit payment.  **(Check one)**

☐ The GST tax does not apply because the death benefit is not included in the decedent's estate for federal estate tax
   purposes.

☐ The GST tax does not apply because the GST tax exemption will offset the GST tax.

☐ The GST tax does not apply because at least one of the trust beneficiaries is not a "skipped" person.

☐ The GST tax does not apply because of the reasons set forth in the attached document (Please attach document
   setting forth the reasons why you believe the GST tax does not apply).

☐ The GST tax may apply.  As a result, the death benefit payment **IS** subject to withholding of the applicable GST tax.
   Enclosed is the completed Schedule R-1 (Form 706) for submission to the Internal Revenue Service.

_____

Dated _____ at _____

_____        _____
Witness                                           Trustee

_____        _____
Witness                                           Trustee

Exhibit 2 - 47

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

## CV12- 4556 SVW (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017

Attorneys for Plaintiff Karen Benjamin, as Trustee of
the Jackson Family 2007 Irrevocable Trust

**ORIGINAL**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN BENJAMIN, as Trustee of the JACKSON FAMILY 2007 IRREVOCABLE TRUST<br><br>PLAINTIFF(S)<br><br>v.<br><br>PHL VARIABLE INSURANCE COMPANY, a Connecticut corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12·4556** SVW (SHx)<br><br><br><br>**SUMMONS** |

TO: DEFENDANT(S):

A lawsuit has been filed against you.

Within    21    days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, <u>Khai LeQuang</u>, whose address is <u>Orrick, Herrington & Sutcliffe , 777 S. Figueroa St., Ste 3200, Los Angeles, CA 90017</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated: **MAY 2 4 2012**

Clerk, U.S. District Court

By: _____
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>KAREN BENJAMIN, as Trustee of the JACKSON FAMILY 2007 IRREVOCABLE TRUST | **DEFENDANTS**<br>PHL VARIABLE INSURANCE COMPANY |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>See ATTACHMENT A | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** Amount to be determined at trial

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
1 Breach of Contract; 2 Breach of cov. of good faith & fair dealing; 3 unjust enrich.; 4 Conn. Unfair Trade Prac.; and 5 Conn. Unfair Ins. Prac.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☒ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☒ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**E CV12·4556**

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)   **CIVIL COVER SHEET**   Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date May 24, 2012
Khai LeQuang

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com

# ATTACHMENT A

ATTORNEYS FOR KAREN BENJAMIN, as Trustee of the JACKSON FAMILY 2007
IRREVOCABLE TRUST

KHAI LEQUANG (SBN 202922)
MELANIE D. PHILLIPS (SBN 245584)
DAVID P. FUAD (SBN 265193)
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA  90017
Telephone: (213) 629-2020
Facsimile:  (213) 612-2499